**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SANDRA BECERRA ARANA, individually, and on behalf of all others similarly situated, | Case No. 2:24-cv-00273-JLT-SKO |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION TO REMAND |
| v. | (Doc. 25) |
| LAND O'LAKES, INC.; KOZY SHACK ENTERPRISES, LLC.; and DOES 1 through 100, inclusive, | |
| Defendants. | |

Sandra Becerra Arana alleges that Land O'Lakes, Inc. and Kozy Shack Enterprises, LLC. violated the Unfair Competition Law and several provisions of the California Labor Code, including provisions related to meal breaks, overtime pay, and timely payment of wages upon termination. (Doc. 1-1 at 20–22.) Plaintiff filed this action in Stanislaus County Superior Court on behalf of himself and similarly situated employees in California. Defendants removed the suit to this Court under the Class Action Fairness Act of 2005 (CAFA). (Doc. 1.) Plaintiff requests remand of this action, claiming, among other things, that the amount-in-controversy requirements under CAFA is not satisfied. (Doc. 25-1.) Defendants maintain the Court has jurisdiction under CAFA. (Doc. 28.) For the reasons set forth below, Plaintiff's motion to remand is **DENIED**.

## I. INTRODUCTION

### A. Background

Plaintiff was employed by Defendants[1] as an hourly, non-exempt employee from

---

[1] It appears to the Court that Defendant Kozy Shack "employed Plaintiff and putative class members," (Doc. 1-1 at

1

approximately February 5, 2008 to December 26, 2022.  (Doc. 1-1 at ¶ 4.)  Plaintiff initiated this action in Stanislaus County Superior Court in which she seeks to state claims on behalf of a class defined as: "All current and former hourly non-exempt employees employed by Defendants as direct employees as well as temporary employees employed through temp agencies in California at any time from four (4) years prior to the filing of the initial Complaint in this matter through the date notice is mailed to a certified class who" were denied their meal breaks or were not properly paid. (Doc. 1-1 at ¶ 32.)  Plaintiff alleges that Defendants (1) failed to pay minimum wages for all hours worked; (2) failed to pay overtime wages; (3) failed to provide meal breaks; (4) failed to timely pay the wages of discharged employees upon separation (i.e., "waiting time" penalties); and (5) violated Cal. Bus. & Prof. Code §§ 17200, *et seq* based on the foregoing failures. (*Id*. at ¶¶ 34–74.)

Specifically, in her first and second claims, Plaintiff contends that "Defendants failed to pay Plaintiff and similarly situated employees all wages at the applicable minimum wage for all hours worked due to Defendants' policies, practices, and/or procedures," such as mandatory off-the-clock COVID-19 screening and "[r]equiring Plaintiff and similarly situated employees to travel off-the-clock to and from a designated area for meal breaks."  (Doc. 1-1 at ¶¶ 16, 21.)  In the third cause of action, Plaintiff alleges that Defendants failed "to provide Plaintiff and similarly situated employees timely, uninterrupted, duty-free meal breaks of at least 30 minutes as a result of" Defendants' "policies, practices, and/or procedures" of requiring employees to travel "off-the-clock . . . to and from a designated area for meal breaks."  (Doc. 1-1 at ¶ 27.) Finally, in the fourth cause of action, Plaintiff alleges she and other Class Members "were not paid their final wages in a timely manner," nor were they paid for regular hours worked, "overtime hours worked, and/or meal period premium wages" as soon as they were terminated.  (Doc. 1-1 at ¶ 31.)

**B.  Procedural History**

After Plaintiff filed this class action, Defendants then removed the instant action to this Court pursuant to the Class Action Fairness Act.  (Doc. 1.)  Defendants assert that the parties are diverse, as Plaintiff is a resident of California and Land O'Lakes is deemed a citizen of

_____

¶ 7), and Kozy Shack is wholly owned by Defendant Land O'Lakes, (Doc. 1 at ¶ 12).

Minnesota.  (*Id*. at ¶ 11.)

Plaintiff requests the instant case remanded back to state court, asserting that Defendant failed to submit competent evidence to support removal—and that the amount-in-controversy requirement is not satisfied.  (Doc. 25-1.)  Defendants oppose Plaintiff's motion for remand and provides revised amount-in-controversy calculations through its expert, Ariel Kumpinsky. (Docs. 28, 28-2.) In reply, Plaintiff maintains that the evidence and calculations submitted thus far are flawed and insufficient to support diversity jurisdiction under CAFA. (Doc. 29.)

## II.   LEGAL STANDARD

### A.  Rule 12(b)(6)

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The plausibility inquiry is a "context-specific task that requires [this Court] to draw on its judicial experience and common sense," *id*. at 679, and "'draw all reasonable inferences in favor of the nonmoving party[,]'" *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022) (quoting *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014)). "Conclusory allegations and unreasonable inferences," however, "do not provide [] a basis" for determining a plaintiff has plausibly stated a claim for relief.  *Coronavirus Reporter v. Apple, Inc.*, 85 F.4th 948, 954 (9th Cir. 2023) (citation omitted).

### B.  CAFA

Under the Class Action Fairness Act of 2005 (CAFA), federal courts have original jurisdiction "over certain class actions, defined in 28 U.S.C. § 1332(d)(1), the class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84–85 (2014) (citing *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013)).  "Congress enacted CAFA to 'curb perceived abuses of the class action device which, in the view of CAFA's proponents, had often

been used to litigate multi-state or even national class actions in state courts.'" *Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1067 (9th Cir. 2019) (quoting *United Steel v. Shell Oil Co.*, 602 F.3d 1087, 1090 (9th Cir. 2010)).  The Supreme Court held there is "no presumption against removal jurisdiction [under CAFA] and that CAFA should be read 'with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.'" *Allen v. Boeing Co.*, 784 F.3d 625, 633 (9th Cir. 2015) (alteration in original) (quoting *Dart Cherokee*, 574 U.S. at 89).

"The burden of establishing removal jurisdiction, even in CAFA cases, lies with the defendant seeking removal." *Washington v. Chimei Innolux Corp.*, 659 F.3d 842, 847 (9th Cir. 2011) (citation omitted).  A defendant seeking removal must file "a notice of removal 'containing a short and plain statement of the grounds for removal . . . '" *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (quoting 28 U.S.C. § 1446(a)).  "'[When] a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court.'  '[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold,'" and "need not contain evidentiary submissions.'" *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 924–25 (9th Cir. 2019) (quoting *Dart Cherokee*, 574 U.S. at 87– 89; *Ibarra*, 775 F.3d at 1197); *see also* 28 U.S.C. § 1446(c)(2) (with certain exceptions, "the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy").  When a removing defendant shows recovery that could exceed $5 million, "and the plaintiff has neither acknowledged nor sought to establish that the class recovery is potentially any less, the defendant has borne its burden to show the amount in controversy exceeds $5 million." *Arias*, 936 F.3d at 927 (internal quotation marks and citation omitted).

"Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." *Dart Cherokee*, 574 U.S. at 89.  If evidence is required, "[b]oth parties may submit evidence supporting the amount in controversy before the district court rules." *Harris v. KM Indus., Inc.*, 980 F.3d 694, 699 (9th Cir. 2020). Nonetheless, the removing party bears the ultimate burden of showing "by a preponderance of the

evidence that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged." *Ibarra*, 775 F.3d at 1197.  This burden may be satisfied by submitting "affidavits or declarations, or other 'summary judgment-type evidence relevant to the amount in controversy at the time of removal,'" or by relying on reasonable assumptions.  *Id.*; *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015); *see also Arias*, 936 F.3d at 925 ("[a]n assumption may be reasonable if it is founded on the allegations of the complaint.").  Removal is proper "if the district court finds, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 574 U.S. at 88 (citations omitted).

The amount in controversy is *not* the amount of damages that the plaintiff will likely recover, *see Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018), nor is it "a prospective assessment of defendant's liability," *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 401 (9th Cir. 2010).  Rather, it "is simply an estimate of the total amount in dispute." *Id.*  Thus, the amount on controversy merely "reflects the maximum recovery the plaintiff could reasonably recover." *Arias*, 936 F.3d at 927.  To determine the amount in controversy for CAFA purposes, the claims of individual members in a putative class are aggregated.  28 U.S.C. § 1332(d)(6); *see also Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595 (2013).

### III.    DISCUSSION

The parties do not dispute the first and second elements—that the putative class has more than 100 members and they are minimally diverse. *Dart Cherokee*, 574 U.S. at 84–85. Indeed, Defendant has alleged that it is incorporated in the State of Minnesota and Minnesota is its principal place of business. (Doc. 1 at ¶ 11) Kozy Shack is also a citizen of Minnesota.  (Doc. 1 at ¶ 12.)  Because Plaintiff is a resident of California and Land O'Lakes is a citizen of Minnesota, the Court finds the parties are diverse for purposes of CAFA.  Also, the Court finds that Defendant has shown, through its expert testimony, that the putative class is likely comprised of more than 100 employees.  (Doc. 28-2 at ¶ 23 (stating that 268 employees were terminated with respect to Plaintiff's waiting time claim).)  Consequently, the number of class members exceeds the minimum required by CAFA.

The parties' dispute centers around whether the amount in controversy exceeds $5 million.

The Court reiterates, once again, that calculating the amount in controversy is a game of "guesstimation"— the law only requires Defendants to reasonably estimate and show, by preponderance of the evidence, that "the maximum" potential damage could "reasonably" arise to $5 million.  *See Arias*, 936 F.3d at 927; *Chavez*, 888 F.3d at 417.

### A.  Preliminary Issue

On December 2, 2025, this Court directed the parties to file a joint statement setting forth their positions as to the impact of the settlement of two cases: *Cook v. Land O'Lakes, Inc. et al.*, (Case No. 1:20-cv-00553-JLT-SAB) and *Smith v. Land O'Lakes, Inc., et al.*, (Tulare County Superior Court, Case No. VCU282808).  (Doc. 32.)

Defendants argue, inter alia, that *Smith* and *Cook* have no bearing on the amount in controversy because a prior settlement should be considered as an affirmative defense, which does not limit the amount of controversy for purposes of CAFA jurisdictional analysis.  (Doc. 34 at 5–6.)  Plaintiff argues that "[b]ecause CAFA requires Defendants to establish the amount 'at stake' in this action, Defendants must exclude putative class members and workweeks whose claims were extinguished by prior settlements. Defendants' failure to do so inflates the amount in controversy through impermissible double counting."  (*Id*. at 3.)

The Court notes, however, that Plaintiff has offered no legal authority in support of her argument.  Moreover, legal "authorities firmly establish that the affirmative defense of *res judicata*—forever barring and enjoining class members from bringing claims released by a prior settlement—cannot defeat CAFA jurisdiction."  *Sarmiento v. Vitas Healthcare Corp. of California*, No. 2:25-cv-04025-MAA, 2025 WL 2417182, at 7 (C.D. Cal. Aug. 19, 2025) (collecting cases).  Therefore, "the Court rejects Plaintiff's suggestion that [] Defendant's settlement of a different wage and hour class action limits Plaintiff's class period such that Defendant's amount in controversy calculations, tied to the class period alleged in Plaintiff's Complaint, must be reduced."  *See Sanchez v. DSV Sols., LLC*, No. EDCV 23-1112 PA (SPx), 2023 WL 5277889, at *3 (C.D. Cal. Aug. 15, 2023).

### B.  Overtime Claim

California Labor Code § 510 requires employers to pay employees who work more than

eight hours in a day *or* forty hours in a week at a rate of no less than one and a half times the regular rate of pay for an employee. *See* Cal. Lab. Code § 510(a); *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1206 (Cal. 2011) ("For these reasons, we answer the first of the certified questions as follows: The California Labor Code does apply to overtime work performed in California for a California-based employer by out-of-state plaintiffs in the circumstances of this case, such that overtime pay is required for work in excess of eight hours per day *or* in excess of forty hours per week." (citation omitted) (emphasis added)); *Angeles v. US Airways, Inc.*, 790 F. App'x 878, 879 (9th Cir. 2020) (Mem.) ("Section 510 requires employers to compensate work at a rate of at least one and one-half times regular pay for any hours worked that exceed eight hours per day or forty hours per week.").

In the motion for remand, Plaintiff challenges Defendants' calculations as to the amount in controversy. (*See* Docs. 25-1, 29.) In response, Defendant filed an expert testimony, presenting various statistical data and calculations.[2] The expert determined that the putative class is comprised of 1,166 Class Members who, collectively, have worked 495,471 shifts in total, with an average shift duration of 8.76 hours. (Doc. 28-2 at ¶ 12.) Defendants' expert also "counted the number of weeks worked by each employee," where a week is counted so long as an employee showed to work at all, no matter how briefly. (Doc. 28-2 at ¶ 19.) This worked out to be 96,962 work weeks. (*Id*. at ¶ 20.) He then assumed that Class Members were not paid for one hour of overtime per work week. (*Id*. at ¶ 19.) Finally, the expert calculated the unpaid overtime as follows: [96,962 work weeks] X [assuming 1 hour of unpaid overtime per work week] X [$23.63/hour average base pay] X [1.5 overtime multiplier] = $3,436,818.09. (*Id*. at ¶¶ 19-20.)

Plaintiff raises numerous objections to this evidence. First, Plaintiff argues that Defendant has failed to "identify any policy that required pre-shift temperature checks, prohibited timely meal periods, or denied final pay." (Doc. 29 at 4.) However, paragraph 21 of the Complaint alleges that Defendants failed to pay Plaintiff and Class Members "all wages," and that this was due to Defendants' "policies, practices, and/or procedures including, but not limited to," COVID screenings. (Doc. 1-1 at ¶ 21.) Indeed, Plaintiff repeatedly used the phrase "policies, practices,

---

[2] At this stage, expert testimony does not need to provide the granularity that P is suggesting.

and/or procedures" throughout the Complaint.  (*See, e.g.*, *id.* at ¶¶ 16, 27, 29, 37, 38, 48, 56, 72.)  Plaintiff represents that her "claims are typical of the claims of the class members in each of the classes."  (*See id.* at ¶ 33(C).)  These words weigh in favor of finding Defendants' calculation using a 20% violation rate for the entirety of the relevant period was reasonable.  *See Ochoa v. Fred Loya Ins. Agency, Inc.*, No. 1:24-CV-0151 JLT BAM, 2024 WL 2014781, at \*10 (E.D. Cal. May 7, 2024) ("[T]his Court found that when the plaintiff alleged a general pattern or practice of unpaid overtime, the presumption of a one-hour per week of missed overtime pay, the equivalent of a 20% violation rate, was reasonable." (collecting cases)); *Wicker v. ASC Profiles LLC*, No. 2:19-cv-02443-TLN-KJN, 2021 WL 1187271, at \*2–3 (E.D. Cal. Mar. 30, 2021) (finding one overtime violation per week reasonable as a 20% violation rate based the plaintiff "alleging 'a pattern and practice' of 'Defendants fail[ing] to pay overtime wages to Plaintiff and other class member for all hours worked'") (alteration in original); *Hender v. Am. Directions Workforce LLC*, No. 2:19-cv-01951-KJM-DMC, 2020 WL 5959908, at \*8 (E.D. Cal. Oct. 8, 2020) (finding defendants' calculation based on a 20% violation rate was "a conservative estimate allowing for the possibility that not every putative class member worked overtime").[3]

Second, Plaintiff argues that Defendants failed to offer any "raw data or working files underlying [their expert]'s analysis." (Doc. 29 at 3.) The Ninth Circuit, however, has expressly rejected this kind of argument in the past, reasoning that Defendants are "permitted to rely on a declaration from an individual who has reviewed relevant employee payroll and wage data," but without sharing the underlying data.  *Enomoto v. Siemens Indus., Inc.*, No. 22-56062, 2023 WL 8908799, at \*2 (9th Cir. Dec. 27, 2023) (citations omitted).  Plaintiff has provided no citation to case law for her assertion that Defendant must provide, at this juncture, an "audit trail by which Plaintiff or this Court can verify [Defendants'] workweek count."  (Doc. 29 at 3.)

Even still, the Court finds that it is unreasonable for Defendants to assume one hour of overtime per shift, paid or unpaid, when it is known that the average shift duration is 8.76 hours.

---

[3] In any event, *Perez v. Rose Hill Co.*, 131 F.4th 804 (9th Cir. 2025) and progeny have made it clear that district courts may assume a 20% violation rate based on allegations that wages and hours violations occurred "at times." *See, e.g.*, *Soto v. Graybar Elec. Co. Inc.*, No. 1:24-cv-00520-JLT-SKO, 2025 WL 3648360, at \*3–5 (E.D. Cal. Dec. 16, 2025) (explaining the effect of *Perez* and progeny).

Rather, a better way to calculate the amount in controversy with respect to the overtime claim[4] is to start with the fact that Class Members had worked 495,471 shifts in total with an average of 8.76 hours per shift; as such, Plaintiff and the Class Members had worked, in aggregate, [495,471 shifts] X [on average, 0.76 hours of overtime per shift] = 376,557.96 hours of overtime.

Next, the Court adopts Defendants' assumption that 20% of all overtime worked were not properly paid.  Therefore, the amount in controversy with respect to the overtime claim is: [376,557.96 hours of overtime] X [20%] X [$23.63/hour base pay] X [1.5 overtime multiplier] = $2,669,419.38.

**C. Meal Break Claim**

Under California Labor Code §§ 226.7 and 516, employers must provide non-exempt employees working more than five hours in a shift with at least one uninterrupted meal break of at least 30 minutes.  Employees working more than ten hours per day must be given a second thirty-minute meal period, unless they are working fewer than twelve hours, in which case the second meal period can likewise be waived.  Employees are entitled to one additional hour at their regular pay rate for each workday in which a compliant meal period was not provided.  Cal. Lab. Code § 226.7(b).

The Defendants' expert first "counted the number of weeks worked by each employee," where a week is counted so long as an employee showed to work at all, no matter how briefly. (Doc. 28-2 at ¶ 17.)  This worked out to be 96,962 work weeks; he then assumed that Class Members were not given their meal breaks once a week.  (*Id*. at 18.)  Next, he multiplied 96,926 potential violations by the Class Member's average wage of $23.63/hour to arrive at $2,290,361.38 in potential liability for Defendants with respect to the meal break claim.  (*Id*.)  As Plaintiff correctly points out, however, there are several flawed, unreasonable assumptions in this calculation.  For instance, an employee may show up once per week for an eight-hour shift, but Defendants' calculation would nonetheless assume that said employee was not paid for her meal

---

[4] This Court cannot simply apply $0 to a claim if it identifies a more reasonable assumption or calculation. *Jauregui v. Roadrunner Transp. Servs.*, Inc., 28 F.4th 989, 994 (9th Cir. 2022) ("In a circumstance like this, merely preferring an alternative assumption is not an appropriate basis to zero-out a claim; at most, it only justifies reducing the claim to the amount resulting from the alternative assumption.")

9

break once per week.

Seemingly, the appropriate starting point is that Class Members worked 495,471 shifts in total with an average of 8.76 hours per shift.  From there, it is reasonable to assume that 80% of those shifts lasted longer than 5 hours or more, such that putative Class Members were entitled to a meal break.  Next, the Court finds that it is reasonable to assume a 20% violation rate—that is, Class Members were not given 30-minute-long meal breaks 20% of the time, even when they were entitled to one.  Courts in this Circuit have found violation rates between 20% to 60% to be reasonable where, as here, a plaintiff alleges a defendant's "policies, practices, and/or procedures," (*see, e.g.*, Doc. 1-1 at ¶¶ 16, 27, 29, 37, 38, 48, 56, 72), caused the purported violations, *see, e.g.*, *Avila v. Rue21, Inc.,* 432 F. Supp. 3d 1175, 1189 (E.D. Cal. 2020) ("[V]iolation rates of 25% to 60% can be reasonably assumed as a matter of law based on 'pattern and practice' or 'policy and practice' allegation." [collecting cases]); *see also Sanchez*, 2015 WL 4919972, at *4 (comparing and collecting cases).  The calculation is thus: [Class Members worked 495,471 shifts with an average duration of 8.76 hours/shift] X [Class Members were entitled to a meal break in 80% of the shifts] X [Defendant failed to provide meal break 20% of the times] X [$23.63/hour average wage] = $1,873,276.76 for the meal break claim.

### D.  Waiting Time Penalties

Under California Labor Code sections 201(a) and 202(a), discharged employees are generally entitled to receive all wages owed immediately on termination, while resigned employees generally receive payment within 72 hours. If an employer fails to timely pay wages due upon termination, then the aggrieved employee is entitled to waiting time penalties "from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."  Cal. Lab. Code § 203(a).

Plaintiff asserts that she and the putative Class Members "are entitled to continuation of their wages, from the day their earned and unpaid wages were due until paid, up to a maximum of thirty (30) days." (Doc. 1-1 at ¶ 66.)  In response, Defendants' expert "was able to identify 268 putative class members who [were] terminated from December 15, 2020 to May 20, 2023."  (Doc. 28-2 at ¶ 23.)  Defendants' expert then calculated the total potential waiting time penalties as

10

follows: [268 terminated Class Members] X [8 hours/day] X [30 days] X [$23.63/hour average pay for terminated employees] = $1,519,881.60.  (Doc. 28-2 at ¶¶ 23–24.)  Plaintiff, however, argues that this Court should assume (1) "only 25% of the 268 terminated employees were subject to waiting time penalties, [(2)] limited to just 10 days" per terminated employee rather than 30 days.  (Doc. 25-1 at 6.)

The Court first considers the question of whether it is reasonable to assume that all 268 terminated employees, rather than 25% of them, are eligible for some amount of waiting time penalties.  Consider, for instance, the situation in *Wilcox v. Harbor UCLA Med. Ctr. Guild, Inc.*, where a plaintiff brought her wage and hour claims—including meal and rest break violations, overtime wages, minimum wages, and waiting time penalties—on behalf of a class including "*all* current and former non-exempt employees of Defendants within the State of California at any time commencing four (4) years preceding the filing of [her] complaint up until the time that notice of the class action is provided to the class."  No. 2:23-cv-02802-MCS-JC, 2023 WL 524626, at *4 (C.D. Cal. Aug. 14, 2023) (emphasis in original).  The court reasoned that a "former employee need only suffer *one* of the alleged violations *at any time* during employment to bring a claim for failure to timely [pay] wages upon termination."  *Id.* at *4 (emphases added).  As such, the court found it "reasonable to assume that . . . 100% of former employees suffered derivative waiting time violations."  *Id.* (citation omitted).  Here, too, Plaintiff tethered her waiting time penalties to the other claims for which she alleges Defendant engaged in a "pattern and practice" of violations.  As a result, any terminated employee need only suffer a single violation—meal break, overtime wages, *or* minimum wages—to be entitled to the waiting time penalties, thereby justifying a 100% violation rate.  *See id*.

Next, the Court turns to the question of whether it is reasonable to assume that all putative Class Members are entitled to the maximum amount (30 days) of statutory penalties.  As Defendants correctly point out, Plaintiff and putative Class members bring this suit because "Defendant failed to pay putative class members wages and that those wages are *still* due and owing," even today.  (Doc. 28 at 14 (emphasis in original).)  Thus, it is reasonable to assume the full 30-day penalty for employees who departed more than 30 days before Plaintiff filed her

complaint,[5] especially when "there is nothing in the [c]omplaint to suggest that violations, once they happened, were ever remedied." *See Chan v. Panera, LLC*, No. 23-cv-04194-JLS-AFM, 2023 WL 6367677, at *4 (C.D. Cal. Sept. 28, 2023).

In fact, it would be *unreasonable* to use an amount less than the 30-day maximum when, as here, the Complaint, (*see* Doc. 1-1 at ¶ 67), explicitly seeks statutory penalties up to a maximum of thirty days, *Ortiz v. Sheraton Op. LLC*, No. 24-cv-05104-JAK-JPR, 2024 WL 4625951, at *8 (C.D. Cal. Oct. 30, 2024) ("[U]sing an amount less than the 30-day penalty maximum is unreasonable. The Complaint itself seeks penalties 'up to a maximum of thirty (30) days.'"). Put differently, because Plaintiff is seeking the maximum wait time penalty, she is foreclosed from arguing that the maximum penalty is not part of the total amount in dispute.

In sum, Defendant has shown by a preponderance of the evidence that the amount in controversy is $2,669,419.38 for the overtime claim, $1,873,276.76 for the meal break claim, and $1,519,881.60 for the wait time claim, for a grand total of $6,062,577.74, which is much greater than the $5 million amount-in-controversy requirement under CAFA. As such, the Court need not consider Plaintiff's minimum wage claim.

## CONCLUSION

Based upon the foregoing, the Court **ORDERS**: Plaintiff's Motion to Remand the case to Stanislaus County Superior Court, (Doc. 25), is **DENIED.**

IT IS SO ORDERED.

Dated:   **January 12, 2026**

UNITED STATES DISTRICT JUDGE

---

[5] The number of employees separated from Defendants less than 30 days before Plaintiff filed her complaint is, presumably, quite small in relation to the total number of employees separated from Defendants over the span of 4 years before Plaintiff filed her complaint.

12